UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| CHARLES SPRAGUE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 2:16-CV-376-PPS-JEM |
| | ) | |
| CITY OF CROWN POINT, INDIANA, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Charles Sprague is a former Crown Point police officer who underwent medical retirement in April 2013 due to a back injury and subsequently accepted a civilian position with the police department, where he continues to work today. Sprague brings this employment discrimination action alleging that his employer, the City of Crown Point, Indiana, discriminated against him because of his disability when it failed to hire him as a full-time General Services Officer, a position for which Sprague claims he was qualified. Sprague also alleges that the City's employees created a hostile work environment for Sprague based on his sex and that, in retaliation for Sprague filing charges of discrimination with the EEOC, the City failed to promote him and removed from his position certain duties that eliminated his opportunities to work overtime hours, while Sprague was ostracized by his coworkers.

The City initially moved to dismiss all claims alleged in the complaint, but subsequently withdrew one of its arguments, leaving me to determine only whether

Sprague's disability discrimination claim is barred due to his failure to timely file a charge with the EEOC. For the reasons discussed below, the City's motion as to the disability discrimination claim is granted and the claim is dismissed.

**Background**

In considering the motion to dismiss, the facts come from the complaint, which I accept as true for present purposes. Sprague was hired by the City of Crown Point as a sworn officer in its police department in or around August 2000. [DE 1 at ¶10.] In 2004, while on duty, Sprague was involved in a car accident and, as a result of his injuries, underwent microdisectomy back surgery on his L4 and L5 vertebrae. [*Id.* at ¶¶11-12.] In 2009, Sprague underwent another microdisectomy back surgery on the same vertebrae and, in 2010, suffered an injury requiring spinal fusion surgery on his L4 and L5 vertebrae. [*Id.* at ¶¶13-15.] Sprague continued to work as a police officer until April 1, 2013, when he was forced to undergo medical retirement. [*Id.* at ¶¶16.] On or around April 17, 2013, the City hired Sprague for a civilian position as a hybrid Investigative Support (records)/General Service Officer ("GSO") with the police department. [*Id.* at ¶¶18-19.] Sprague's duties in Investigative Support involved filing detective cases and helping detectives with background information, while his duties as a GSO involved enforcing city ordinances, inspecting properties, following up on animal-related complaints, issuing written notices of violations, and issuing citations for city ordinance violations. [*Id.* at ¶¶21, 23.]

On or around April 28, 2014, Sprague applied for a position with the police

department as a full-time GSO. [*Id.* at ¶25.] Sprague claims that his work performance met or exceeded the City's expectations and he was able to perform the responsibilities of a full-time GSO and had, indeed, performed those duties since being hired in his civilian hybrid position. [*Id.* at ¶¶24, 26.] On May 8, 2014, Chief of Police Peter Land informed Sprague that he would not get an interview for the GSO position. [*Id.* at ¶27.] Sprague alleges that on May 12, 2014, Deputy Chief Jim Janda informed Sprague that the Mayor and his chief of staff did not want Sprague to receive the full-time GSO position because of his disability. [*Id.* at ¶28.] On or around July 21, 2014, the City hired Ricardo Silva, who had less experience and training than Sprague, for the GSO position. [*Id.* at ¶29.] Sprague alleges that following the hire of Silva and continuing until or around July 2015, Crown Point City Councilor Robert Clemons repeatedly told Sprague that:

> (1) he had influence with the Mayor; (2) he would recommend Sprague for the GSO position; (3) Sprague was the best candidate for the job because he was already doing the job and would not need to be trained; and (4) not to worry, because the job was Sprague's.

[*Id.* at ¶30.] Sprague filed a Charge of Discrimination with the EEOC on or around May 14, 2015 alleging that he was passed over for the GSO position because of his disability. [*Id.* at ¶31.]

Sprague filed this action on August 23, 2016 alleging violations of the Americans with Disabilities Act ("ADA") for failure to hire and retaliation. Sprague also alleged claims under Title VII for sex harassment and retaliation. [DE 1.] The City initially

3

moved to dismiss all claims against it, but subsequently withdrew its argument as to Sprague's sex harassment and retaliation claims, DE 19 at 2, leaving me to decide only if Sprague's failure to hire claim under the ADA should be dismissed.

## Discussion

The City has moved to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (internal quotation marks and citations omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). I must accept as true all factual allegations in the amended complaint and draw all reasonable inferences in favor of the plaintiff, but I am not required to accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft*, 556 U.S. at 663.

In Count I of the complaint, Sprague alleges that he is disabled and the City refused to hire him for a full-time GSO position because of his disability in violation of the ADA. [DE 1 at ¶7.] The City argues that this claim is barred because Sprague failed to timely file the requisite EEOC charge. As a prerequisite to filing a complaint under Title VII, a plaintiff must first file a timely charge of employment discrimination with the EEOC that encompasses the conduct complained of and subsequently must receive a statutory notice of right to sue from the EEOC. *See* 42 U.S.C. §2000e–5(e), (f); *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 831 (7th Cir. 2015) ("As a precondition to filing claims under Title VII, [the plaintiff] had to file a charge

with the EEOC."). Indiana is a deferral state where plaintiffs have 300 days after the unlawful employment action to file an EEOC charge in this type of claim. *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 445 (7th Cir. 1994). The ADA adopts the enforcement procedures governing Title VII actions, including the filing procedures and timing requirements. 42 U.S.C. § 12117(a). The 300-day period begins to run on the date the adverse employment decision is made and communicated to the plaintiff. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990)

Here, it is not disputed that Sprague did not file his EEOC charge within 300 days of the adverse employment decision being communicated to him. Recall that Sprague alleged in his amended complaint that he was told on May 12, 2014 that he wasn't being hired because of his disability. So there is no question that that is the date of the adverse employment action. Yet 12 months went by before Sprague brought his claim to the EEOC. As a result, the City moved to dismiss Sprague's ADA failure to hire claim.

Sprague argues that the 300-day statute of limitations was tolled due to equitable estoppel. [DE 18 at 6-7.] Equitable estoppel is a tolling doctrine that "comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990). "Equitable tolling permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Hentosh v. Herman M. Finch Univ. Health Sciences*,

5

167 F.3d 1170, 1174 (7th Cir. 1999) (internal quotations omitted). The doctrine is reserved for situations where the claimant has made a good faith error (*e.g.* brought suit in the wrong court) or has been prevented in some extraordinary way from filing his complaint on time. *Threadgill v. Moore U.S.A., Inc.*, 269 F.3d 848, 850 (7th Cir. 2001). A plaintiff is entitled to the benefit of equitable tolling if he shows (1) that he has been pursuing his rights diligently, and (2) that some "extraordinary circumstance" stood in his way and prevented timely filing. *Lee v. Cook County, Ill.*, 635 F.3d 969, 972 (7th Cir. 2011); *Holland v. Florida*, 560 U.S. 631, 649 (2010); *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

Sprague hasn't come close to meeting this exacting standard. Sprague knew that he was wronged on May 12, 2014 when he was told that he wasn't getting the job because he is disabled. Yet he failed to diligently pursue his claim. There is certainly nothing "extraordinary" that is alleged to have occurred here. Sprague alleges only that, following the hire of Silva for the full-time GSO position, Crown Point City Councilman Robert Clemons told Sprague that he had influence with the Mayor and that Sprague would receive a GSO position. [DE 1 at ¶30.] Sprague alleges that these assurances began when someone else got the GSO job and then continued for a year [*Id.*] It is unclear from the complaint what influence, if any, Clemons had on the ultimate decision maker in GSO hiring decisions and whether a reasonable person would have taken his assertions as true. But in any event, nowhere in the complaint does Sprague allege that Clemons made these assertions in an effort to get him to

refrain from pursuing his claim. Specifically, Sprague does not allege that Clemons made these statements with the intent to delay Sprague's filing of his EEOC charge (or even that Clemons was aware that Sprague might file such a charge), or that Clemons knew that his assertions were deceptive or false. In short, there are no "extraordinary circumstances" in this case that calls for the use of equitable estoppel to excuse an admittedly untimely filing.

Finally, Sprague makes the argument that because Sprague's failure to file suit within the statute of limitations is an affirmative defense, it is not proper subject matter for a Rule 12(b)(6) motion and must be brought under Rule 12(c). [DE 18 at 6-7.] And while Sprague is correct that when a plaintiff's allegations show an airtight defense that pleads him out of court, the judge should dismiss the pleadings under Rule 12(c), the Seventh Circuit has often used 12(b)(6) and 12(c) interchangeably in this context. *See Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012); *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) ("The exception occurs where, as here, the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations.). For these reasons, I grant the City's motion to dismiss Sprague's ADA failure to hire claim.

## CONCLUSION

For the aforementioned reasons, the Court **GRANTS** the City of Crown Point's Motion to Dismiss Plaintiff's Complaint [DE 15] as to Count I of the complaint and

**DENIES AS MOOT** the remainder of the City of Crown Point's Motion to Dismiss Plaintiff's Complaint.

**SO ORDERED**.

ENTERED: November 15, 2016.

                                              s/ Philip P. Simon
                                            PHILIP P. SIMON, CHIEF JUDGE
                                            UNITED STATES DISTRICT COURT